**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**JASON CHADWICK BULLOCH and MARK BRANDON GODWIN,**<br><br>**Debtors.** | **CHAPTER 11**<br><br>**CASE NO. 26-51027-sms** |

# PLAN OF REORGANIZATION

**Dated this 26th day of May, 2026**

---

Filed by:

Jason Chadwick Bulloch
Mark Brandon Godwin
Debtors and Debtors in Possession

Attorneys for Debtor in Possession:

Leslie M. Pineyro
William M. Gooding
Jones & Walden LLC
699 Piedmont Ave NE
Atlanta, Georgia 30308
(404) 564-9300

COME NOW Jason Chadwick Bulloch and Mark Brandon Godwin, Debtors and Debtors in possession in the above-captioned case (the "Debtors"), and, pursuant to sections 1121 and 1123 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), propose this Plan of Reorganization (the "Plan") for the resolution of the Claims against the Debtors. The Debtors are the proponent of this Plan within the meaning of section 1129 of the Bankruptcy Code.

## Article 1
## Introduction

1.1 Disclosure Statement. Contemporaneously with the filing of the Plan, Debtors filed and served a Disclosure Statement, as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains the Debtors' history, financial information regarding Debtors and their assets, and a solicitation of acceptances of this Plan.

1.2 Property and Claims. This Plan deals with all property of Debtors and provides for treatment of all Claims against Debtors and their property.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article 2.1 of this Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1 The following terms, when used in this Plan, shall have the following meaning:

2.1.1 "Administrative Claim" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2 "Allowed Claim" shall mean a Claim or any portion thereof that is enforceable against Debtors or enforceable against the property of Debtors under sections 502 *or* 503 of the Bankruptcy Code.

2.1.3 "Allowed Secured Claim" shall mean the amount of the allowed Claim held by parties secured by property of Debtors which is equal to the amount provided by the Plan unless such amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4 "Allowed Unsecured Claim" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5 "Assets" means, collectively, all of the property, as defined by sections 541 and 1115 of the Bankruptcy Code, of the Estate of the Debtors (including without limitation, all

of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such properties exist on the Effective Date or thereafter in accordance with sections 541 and 1115 of the Bankruptcy Code.

2.1.6 "Avoidance Action" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7 "Ballot" means each of the ballot forms that are distributed with the Disclosure Statement to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8 "Bankruptcy Case" means the chapter 11 case initiated by the Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9 "Bankruptcy Code" means title 11 of the United States Code.

2.1.10 "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

2.1.11 "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.11.1 "Bar Date" and "Bar Order" mean, the Court entered an order (Doc. No 33) (the "Bar Order") setting April 20, 2026 (the "Bar Date") as the last day for all creditors and parties in interest to file proofs of claim. The terms of the Bar Order will survive entry of the Confirmation Order and any Final Decree and the terms of the Bar Order are adopted into the Plan as if restated verbatim.

2.1.12 "Business Day" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.13 "Cash" means legal tender of the United States of America and equivalents thereof.

2.1.14 "Causes of Action" means all Avoidance Actions and any and all of Debtor's actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.15 "Chapter 11" means chapter 11 of the Bankruptcy Code.

2.1.16 "Claim" means a claim against Debtors whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.17 "Class" means a category of Claims described in this Plan.

2.1.18 "Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.19 "Confirmation Hearing" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters under section 1128 of the Bankruptcy Code, as such hearing may be continued.

2.1.20 "Confirmation Order" means the order confirming this Plan pursuant to section 1129 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to the Debtor.

2.1.21 "Debtors" shall mean Jason Chadwick Bulloch and Mark Brandon Godwin, Debtors in this Bankruptcy Case.

2.1.22 "Disallowed Claim" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtors' Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtors' Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.23 "Disclosure Statement" means the Disclosure Statement for Plan of Reorganization filed by Debtors as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, as such Disclosure Statement may be amended, modified or supplemented from time to time.

2.1.24 "Disputed Claim" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.25 "Distribution" means any distribution by Debtors or reorganized Debtors to a Holder of an Allowed Claim.

2.1.26 "District Court" means the United States District Court for the Northern District of Georgia.

2.1.27 "Effective Date" means the date that is 30 days after entry of a Confirmation Order.

2.1.28 "Equipment" means the machinery, fixtures, equipment, and other supplies used by Debtors in the operation of business.

2.1.29 "Estate" means, with regard to Debtors, the estate that was created by the commencement by Debtors of the Bankruptcy Case pursuant to sections 541 and 1115 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtors and any and all interests in property, whether real, personal or mixed, rights, Causes of Action, Retained Actions, avoidance powers or extensions of time that such Debtors or such estate shall have had as of the commencement of the Bankruptcy Case, or which such Estate acquired after the commencement of the Bankruptcy Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise as provided by sections 541 and 1115 of the Bankruptcy Code.

2.1.30 "Executory Contract or Unexpired Lease" means all executory contracts and unexpired leases to which Debtors are a party.

2.1.31 "Filing Date" means January 26, 2026.

2.1.32 "Final Distribution" means the Distribution by Debtors or reorganized Debtors that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.33 "Final Distribution Date" means the Distribution Date on which the Final Distribution is made.

2.1.34 "Final Order" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.35 "Holder" means a holder of a Claim or Interest, as applicable.

2.1.36 "Impaired" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.37 "Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.38 "Person" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.39 "Plan" means this plan of reorganization as the same may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.40 "Priority Claim" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.41 "Priority Tax Claim" means a Claim against the Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.42 "Professional Compensation" means any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals.

2.1.43 "Record Date" means the date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of Holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior thereto, then the Record Date shall be the Confirmation Date.

2.1.44 "Record Holder" means the Holder of a Claim as of the Record Date.

2.1.45 "Retained Action" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtors or Debtors' Estate may hold against any Person, including, without limitation, (i) claims and Causes of Action brought prior to the Effective Date, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtors, (iii) claims and Causes of Action relating to strict enforcement of the Debtors' intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of the Debtors' accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtors' business, including without limitation, claim overpayments and tax refunds, (v) all Causes of Action that are Avoidance Actions and (vi) Debtors specifically reserve all rights, claims and defenses related to objections to claims.

2.1.46 "Schedules" means the Schedules of Assets and Liabilities Debtors filed in the Bankruptcy Case, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.47 "Secured Claim" means a Claim against Debtors to the extent secured by a Lien on any property of Debtors on the Petition Date to the extent of the value of said property as provided in section 506(a) of the Bankruptcy Code.

2.1.48 "Subordinated Claim" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.49 "Unimpaired" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.50 "Unsecured Claim" means any Claim against Debtors that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2 Time. Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day which is not a Business Day, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Business Day.

2.3 Events of Default. Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtors in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtors at the addresses of record for Debtors as reflected on the docket for this Bankruptcy Case, unless Debtors have provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtors have fifteen (15) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtors and Debtors' counsel of the Default Notice (or the following business day if the 15th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtors via certified mail or recognized overnight carrier with a copy via email to Leslie Pineyro (Jones & Walden LLC) at the address reflected in the then current directory of the State of Bar of Georgia. Debtors shall have fifteen (15) days or thirty (30) days (as applicable) from Debtors' and Debtors' counsel's receipt of the Default Notice to cure such default. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 1 shall not constitute a default under Class 3).

2.4 Notices. All notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to Debtors via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtors in this Case, unless Debtors have provided such Holder with written notice of change of address for Debtors, with a copy via email to Leslie Pineyro at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Leslie Pineyro (Jones & Walden LLC) shall not be deemed receipt by Debtors of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## Article 3
## Classification of Claims and Interests; Impairment

3.1 Summary. The categories of Claims set forth below classify all Claims against the Debtors for all purposes of this Plan. A Claim shall be deemed classified in a particular Class only to the extent the Claim qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim qualifies within the description of such different Class. The treatment with respect to each Class of Claims provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims.

3.2.1 Class 1 shall consist of the Secured or Priority Tax Claims of the Internal Revenue Service.

3.2.2 Class 2 shall consist of the Secured or Priority Tax Claims of the Georgia Department of Revenue.

3.2.3 Class 3 shall consist of the Secured or Priority Tax Claims of Governmental Units Not Otherwise Classified.

3.2.4 Class 4 shall consist of Secured Claim of Hyundai Capital America.

3.2.5 Class 5 shall consist of Secured Claim of Alerus Financial, N.A.

3.2.6 Class 6 shall consist of the Secured Claim of Wells Fargo Bank, N.A.

3.2.7 Class 7 shall consist of Convenience Class Unsecured Claims.

3.2.8 Class 8 shall consist of General Unsecured Creditors.

3.2.9 Class 9 shall consist of Debtors' Interests.

## Article 4
## Treatment of Claims and Interests

A complete description of the treatment of each Class is set forth below.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

Debtors reserve the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan with any accrued and unpaid interest, if any is due under the terms of the Plan) without prepayment penalty.

### 4.1 Class 1: Secured or Priority Tax Claims of the Internal Revenue Service

Class 1 consists of any Secured Claim or Priority Tax Claim against Debtors held by the Internal Revenue Service (the "IRS") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 1 IRS Tax Claim"). On March 4, 2026, the IRS filed proof of claim 7 in the amount of $48,967.94 asserting unsecured priority claims in an estimated amount for 2025 income taxes. Debtors are in the process of completing their 2025 tax return and anticipates the IRS will amend their proof of claim once filed. The amount allowed as a priority or secured tax claim owed to the IRS as an Allowed Class 1 IRS Tax Claim shall be referred to herein as the "Allowed Class 1 IRS Claim"). On April 6, 2026, the Debtors received a letter from the IRS stating the Debtors were entitled to refund of $23,074.70 on their 2022 taxes (the "2022 Tax Refund"). The Debtors have not received the 2022 Tax Refund and anticipate the 2022 Tax Refund will be used to offset any taxes owed to the IRS in 2025.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502(b)(9) and is July 25, 2026. Upon passage of the Government Bar Date, any claim asserted or assertable by the IRS on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtors' right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtors shall pay any claim of the IRS assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) on the terms herein, and the IRS shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims. After the Government Bar Date, any estimated claim of the IRS shall be capped at (i) if a proof of claim was timely filed, the amount provided in the proof of claim filed by the IRS prior to the Government Bar Date or (ii) if no proof of claim is timely filed, the amount provided in Debtors' Schedules, unless the Debtors scheduled such amount as unliquidated, contingent, or disputed, in which case such amounts will be $0.00.

Any Allowed Class 1 IRS Tax Claim shall be paid pursuant to Class 1, and any IRS general unsecured tax claim is specifically classified and will be paid pursuant to the General Unsecured Class 6. In the event of an Allowed Class 1 IRS Tax Claim, Debtors shall pay any Allowed Class 1 IRS Tax Claim in equal monthly payments of $581.11 commencing on the Effective Date and continuing by the 28th day of each subsequent month; with interest accruing at the rate required by 11 U.S.C. § 511 provided, however, that any Allowed Class 1 IRS Tax Claim that has not been paid in full on or before the 5th anniversary of the Filing Date shall be paid with a final balloon payment on the 5th anniversary of the Filing Date (i.e. January 26, 2031) unless such Holder agrees to a longer payment term, which such agreement may be communicated by the Holder continuing to accept monthly payments after January 26, 2031. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 1 received by the IRS shall be applied to the principal tax obligation of the Class 1 IRS Tax Claim owed by Debtors pursuant to Class 1. Debtors' Class 1 payments shall be applied in the following order: (i) interest accruing on the Class 1 Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 1 IRS Tax Claim, and (iii) interest and penalties included in the Allowed Class 1 IRS Tax Claim, if any,

which accrued prior to the Filing Date and Effective Date.

A failure by the Debtors to make a payment on the Class 1 IRS Tax Claim to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 1, the IRS must send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' attorney shall not be deemed receipt by Debtors of the required Default Notice. In the event of an uncured default under Class 1 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, , then the administrative collection powers and rights of the United States, acting through the IRS, will be reinstated as such powers and rights existed prior to the filing of the bankruptcy petition by the Debtors and the IRS may (a) engage in administrative collection activity, (b) institute a collection action to enforce and collect the entire amount of its outstanding tax claim; (c) exercise and pursue any and all available remedies any and all rights and remedies it may have under applicable non-bankruptcy law or regulation without further leave of Court; and/or (d) seek such relief as may be appropriate.

The amount of any claim of the IRS that is not otherwise assessable or due and payable on or prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i), and the right of the IRS, if any, to payment in respect thereto, shall: (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to Section 1192 or 1141 (as applicable) of the Bankruptcy Code. The rights and treatment of the IRS and obligations and liability of Debtors or their property regarding any claim of the IRS against Debtors which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i), however, shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Filing Date and not timely asserted or amended by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserves the right to pay any tax claim in full at any time.

Nothing herein shall constitute an admission as to the nature, validity, or amount of any such claim. Debtors disputes this claim and reserves the right to file an objection to claim or pursue a dispute outside of the bankruptcy. The Allowed amount of the of the Secured or Priority Tax Claims of the Internal Revenue Service (whether secured or priority) will be determined in accordance with applicable law without the necessity of Debtors filing an objection to the IRS proof of claim provided Debtors reserves the right to object to the same or to request this Court estimate or determine Debtors' tax liability pursuant to 11 U.S.C. § 505 or otherwise.

Nothing contained herein shall prohibit Debtors from objecting to the Class 1 Claims for any reason.

The Claim of the Class 1 Creditor is Unimpaired by the Plan.

**4.2 Class 2: Secured or Priority Tax Claims of the Georgia Department of Revenue**

Class 2 consists of any Secured Claim or Priority Tax Claim against Debtors held by the Georgia Department of Revenue (the "GDR") which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) (the "Class 2 GDR Tax Claim"). Debtors scheduled the GDR as holding a claim for $0.00. Debtors are in the process of filing their 2025 tax return. If any amount is owed to the GDR for 2025, the priority amount of such claim, shall be paid in accordance with Class 2. The amount allowed as a priority or secured tax claim owed to the IRS as an Allowed Class 2 GDR Tax Claim shall be referred to herein as the ("Allowed Class 2 GDR Claim").

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502(b)(9) and is July 25, 2026. Upon passage of the Government Bar Date, any claim asserted or assertable by the GDR on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) shall: (i) be time barred and fixed as provided in the Plan, subject to Debtors' right to object to the same and (ii) any other, additional, or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtors shall pay any claim of the GDR assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i) on the terms herein, and the GDR shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims. After the Government Bar Date, any estimated claim of the GDR shall be capped at (i) if a proof of claim was timely filed, the amount provided in the proof of claim filed by the GDR prior to the Government Bar Date or (ii) if no proof of claim is timely filed, the amount provided in Debtors' Schedules, unless the Debtors scheduled such amount as unliquidated, contingent, or disputed, in which case such amounts will be $0.00.

Any Allowed Class 2 GDR Tax Claim shall be paid pursuant to Class 2, and any GDR general unsecured tax claim is specifically classified and will be paid pursuant to the General Unsecured Class 6. In the event of an Allowed Class 2 GDR Tax Claim, Debtors shall pay any Allowed Class 2 GDR Tax Claim at the rate of $120.00 per month commencing on the Effective Date and continuing by the 28th day of each subsequent month until paid in full; with interest accruing at the rate required by 11 U.S.C. § 511 provided, however, that any Allowed Class 2 GDR Tax Claim that has not been paid in full on or before the 5th anniversary of the Filing Date shall be paid with a final balloon payment on the 5th anniversary of the Filing Date (i.e. January 26, 2031) unless such Holder agrees to a longer payment term, which such agreement may be communicated by the Holder continuing to accept monthly payments after January 26, 2031. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2 received by the GDR shall be applied to the principal tax obligation of the Class 2 GDR Tax Claim owed by Debtors pursuant to Class 2. Debtors' Class 2 payments shall be applied in the following order: (i) interest accruing on the Class 2 Tax Claim after the Effective Date under the Plan, (ii) the taxes included in the Class 2 GDR Tax Claim, and (iii) interest and penalties included in the Allowed Class 2 GDR Tax Claim, if any, which accrued prior to the Filing Date and Effective Date. Debtors are not aware of any Class 2 GDR Tax Claim.

A failure by the Debtors to make a payment on the Class 2 GDR Tax Claim to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under Class 2, the GDR must send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' attorney shall not be deemed receipt by Debtors of the required Default Notice. In the event of an uncured default under Class 2 following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the GDR that is not otherwise assessable or due and payable on or prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i), and the right of the GDR, if any, to payment in respect thereto, shall: (i) be determined in the manner in which the amount of such Claim and the rights of the GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to Section 1192 or 1141 (as applicable) of the Bankruptcy Code. The rights and treatment of the GDR and obligations and liability of Debtors or their property regarding any claim of the GDR against Debtors which was assessable or due and payable prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. § 502(i), however, shall be treated and fixed in accordance with the Plan, and any additional, other or amended claims assessable or due and payable prior to the Filing Date and not timely asserted or amended by the GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserve the right to pay any tax claim in full at any time.

Nothing herein shall constitute an admission as to the nature, validity, or amount of any such claim. Debtors dispute this claim and reserve the right to file an objection to claim or pursue a dispute outside of the bankruptcy. The Allowed amount of the of the Secured or Priority Tax Claims of the Internal Revenue Service (whether secured or priority) will be determined in accordance with applicable law without the necessity of Debtors filing an objection to the GDR proof of claim provided Debtors reserves the right to object to the same or to request this Court estimate or determine Debtors' tax liability pursuant to 11 U.S.C. § 505 or otherwise.

Nothing contained herein shall prohibit Debtors from objecting to the Class 2 Claims for any reason.

The Claim of the Class 2 Creditor is Unimpaired by the Plan.

**4.3 Class 3: Secured or Priority Tax Claims of the Governmental Units Not Otherwise Classified Herein**

Class 3 shall consist of any Priority or Secured Claim of a governmental unit entitled to

priority under 11 U.S.C. §507(a)(8) or §502(i), which are not otherwise specifically classified in the Plan ("Class 3 Governmental Unit Tax Claim").

Debtors are not aware of any Holders of Class 3 Governmental Unit Tax Claim not otherwise classified in the Plan except the Illinois Department of Revenue. In the event there are Allowed Holders of Class 3 Governmental Unit Tax Claims, Debtors shall pay any Allowed Class 3 Tax Claim in in full pursuant to Section 6.6 on the Plan; with interest accruing at the rate required by 11 U.S.C. § 511 provided, however, that any Allowed Class 3 Governmental Unit Tax Claim that has not been paid in full on or before the 5th anniversary of the Filing Date shall be paid with a final balloon payment on the 5th anniversary of the Filing Date (i.e. January 26, 2031) unless such Holder agrees to a longer payment term, which such agreement may be communicated by the Holder continuing to accept monthly payments after January 26, 2031. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3 received by a holder shall be applied to the principal tax obligation owed by Debtors pursuant to Class 3. Debtors' Class 3 payments shall be applied in the following order to the following parties, if any, of the Allowed Class 3 Governmental Unit Tax Claim (i) first to the interest accruing after the Effective Date pursuant to the terms of the Plan on the secured portion of the Class 3 Governmental Unit Tax Claim; then (ii) to the principal tax obligation owing on the secured portion of the Class 3 Governmental Unit Tax Claim, if any; then (iii) interest accruing before the Effective Date on the secured portion of the Class 3 Governmental Unit Tax Claim; then (iv) to any penalties included in the secured portion of the Class 3 Governmental Unit Tax Claim, if any; then (v) to the interest accruing after the Effective Date pursuant to the terms of the Plan on the priority portion of the Class 3 Governmental Unit Tax Claim; then (vi) to the principal tax obligation owing on the priority portion of the Class 3 Governmental Unit Tax Claim, if any, then (vii) interest accruing before the Effective Date on the priority portion of the Class 3 Governmental Unit Tax Claim; and then (viii) to any penalties included in the priority portion of the Class 3 Governmental Unit Tax Claim, if any.

The Government Bar Date for filing proofs of claim is fixed by 11 U.S.C. § 502(b)(9) and is November 1, 2025. After the Governmental Bar Date, any claim asserted or assertable by a holder of an Allowed Class 3 Governmental Unit Tax Claim on or before the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) shall: (i) be time barred and fixed as provided in the Plan (i.e. $0.00, subject to Debtors' right to object to the same) and (ii) any other, additional or amended claim assessable on or prior to the Filing Date shall be disallowed in its entirety and forever discharged. Debtors shall pay any claim of an Allowed Class 3 Governmental Tax Unit Claim Holder assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and holders of an Allowed Class 3 Governmental Unit Tax Claim shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

A failure by the Debtors to make a payment under Class 3 to a holder of an Allowed Class 3 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default under Class 3 as to such holder. In the event of a default under Class 3, the applicable holder may send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and

amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. Only in the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Governmental Unit may (a) enforce the entire amount of its then outstanding Allowed Class 3 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the applicable Allowed Class 3 Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of a holder of an Allowed Class 3 Governmental Unit Tax Claim that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of Governmental Unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of Governmental Unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced; (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced; and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Governmental Unit and obligations and liability of Debtors or their property regarding any claim of Governmental Unit against Debtors which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by Governmental Unit in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserve the right to pay any tax claim in full at any time.

Nothing contained herein shall prohibit Debtors from objecting to the Class 3 Claims for any reason.

The Claims of the Class 3 Creditor are Unimpaired by the Plan.

**4.4 Class 4: Secured Claim of Hyundai Capital America**

Class 4 consists of the secured claim of Hyundai Capital America dba Genesis Finance ("HCA"). HCA filed proof of claim 3 in the total amount of $35,420.33 (the "Class 4 Secured Claim") secured by a first priority security interest in Debtors' 2023 Genesis GV70, Vin ending in 5662 (the "Class 4 Collateral") as further evidenced by a Retail Installment Sale Contract dated January 15, 2023 and recording of HCA's lien on the Title for the Class 4 Collateral.

Debtors will pay the Allowed Class 4 Secured Claim in equal monthly installments of $696.99 each commencing on the Effective Date and continuing by the 28th day of each subsequent month with interest accruing on the principal balance of the Class 4 Secured Clam at the annual rate of 6.75%. The Class 4 Secured Claim shall continue and attached to the Class 4 Collateral to same extent validity and priority as existed on the Petition Date. Upon receipt of the Class 4 Secured Claim, the Holder of the Class 4 Secured Claim shall release its lien and security

interest on the Class 4 Collateral.

The Claims of the Class 4 Creditor is Impaired by the Plan.

**4.5 Class 5: Secured Claim of Alerus Financial, N.A**

Class 5 consist of the Secured Claim of Alerus Financial, N.A. ("AF") secured by a first priority lien on Debtors' residence located at 2973 Payton Road NE, Atlanta, GA 30345 (DeKalb County, Georgia) (as more particularly described in the Class 5 Security Deed, the "Residence"). Debtors scheduled Alerus has holding a claim secured by Debtors' Residence in the amount of $763.860.97 (such amount, or such other amount as allowed by the Court the "Class 5 Secured Claim"). The Class 5 Secured Claim is evidenced by a Security Deed recorded at Deed Book 3226, Page 489, Real Property Records of DeKalb County, Georgia (the "Class 5 Security Deed" and together with the attendant instruments and documents the "Class 5 Loan Documents") naming Lynda T Bulloch, Jason C. Bulloch and Mark B. Godwin as grantors and Alerus as grantee for indebtedness in the original principal amount of $765,000.00.

The Allowed Class 5 Secured Claim shall continue and attach to the Residence to the same extent, validity, and priority as existed on the Filing Date. Upon Debtors' information and belief, the Class 5 Loan Documents are current. If there is an Allowed arrearage owed on the Secured Class 5 Claim, Debtors will pay the same in six equal monthly payments commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th of each subsequent month for a total of 6 payments. The Class 5 Loan Documents shall continue in full force and effect on the Effective Date and Debtors will continue to pay the regular monthly payments pursuant to the Class 5 Loan Documents; provided that this Bankruptcy and Debtors' financial condition shall not be a default thereunder, and the Debtors shall be treated as current on the Confirmation Date. As of the Petition Date, the regular monthly mortgage payment on Class 5, inclusive of escrow for taxes and insurance, was approximately $6,795.76 consisting of (i) principal and interest payments of $5,348.99 and (ii) escrow for taxes and insurance of $1,446.77.

The Claim of the Class 5 Creditor is Unimpaired by the Plan.

**4.6 Class 6: Secured Claim of Wells Fargo Bank, N.A.**

Class 6 consists of the secured claims of Wells Fargo Bank, N.A. ("Wells Fargo"). Wells Fargo filed proof of claim 2 in the total amount of $9,896.93 (the "Total Asserted Class 6 Claim") secured by a purchase money security interest on Debtors' various items purchased from Hinson Galleries (the "Furniture"). Debtors value the Furniture at $7,029.86 (such amount or such other amount allowed by the Court prior to the entry of the Confirmation Order is referred to as the "Allowed Class 6 Secured Claim.") The Class 6 Secured Claim is evidenced by a Wells Fargo Home Furnishings Credit Card Application naming Debtor Bulloch as borrower, and Wells Fargo as creditor with a purchase money security interest.

The Allowed Class 6 Secured Claim of Wells Fargo shall continue and attach to the Furniture to the same validity, and priority as existed on the Filing Date and to the extent of the

Class 6 Secured Claim. The Total Asserted Class 6 Claim shall be bifurcated into (i) the Allowed Class 6 Secured Claim (i.e. $7,029.86) and (ii) a Class 6 Convenience Class Unsecured Claim for the remaining balance of the Total Asserted Class 6 Claim (i.e. $2,687.07). Debtors will pay the Allowed Class 6 Secured Claim in 60 equal monthly payments of $145.33 beginning on the 28th day of the first month following the Effective Date and continuing on the 28th day each following month until the Allowed Class 6 Secured Claim is paid in full with interest accruing at the annual rate of 7.75%. Any payments received by Wells Fargo after the Petition Date but prior to the Effective Date on the Total Asserted Class 6 Claim shall be applied to the principal balance of the Allowed Class 6 Secured Claim. Any payment received by Wells Fargo on the Allowed Class 6 Secured Claim on or after the Effective Date, shall be applied first to accrued unpaid interest accruing post-petition on the Allowed Class 6 Secured Claim and then to the principal balance.

Upon receipt of payment in full of the Allowed Class 6 Claim, Wells Fargo shall release its lien on the Class 6 Collateral within 60 days of such receipt.

The holder of the Class 6 Allowed Secured Claim is impaired by the Plan and is entitled to vote.

**4.7 Class 7: Convenience Class Unsecured Claims**

Class 7 shall consist of the convenience class unsecured claims consisting of claims less than $40,000.00. Debtors will pay the Holders of Class 7 Convenience Claims their total pro-rata share of the Unsecured Creditor distribution on the Effective Date of the Plan (the "Effective Date Distribution"). Debtors anticipate but do not warrant and represent the following holders of Class 7 Convenience Class Claims based on the filed and scheduled claims. The basis for the below calculation is detailed on **Exhibit "A"** of the Plan which is based on a fraction the numerator of which is the particular Non-Priority Unsecured Claim[1] and the denominator of which is the Total Non-Priority Unsecured Claims[2].

| Holder | Scheduled Claim | Claim No. | Filed Claim | Estimated Allowed Claim (not an admission) | Estimated Effective Date Distribution |
|---|---|---|---|---|---|
| American Express National Bank | $ 35,464.15 | 4 | $ 34,334.72 | $ 34,334.72 | **$ 8,591.14** |
| Bank of America | $ 14,523.41 | | $ - | $ 14,523.41 | **$ 3,634.01** |
| Blaze Credit Union | $ 13,911.04 | 8 | $ 13,586.64 | $ 13,586.64 | **$ 3,399.61** |
| Capital One, N.A. | $ 4,262.31 | 6 | $ 4,328.70 | $ 4,328.70 | **$ 1,083.12** |
| Capital One, N.A. | $ 16,629.00 | 5 | $ 6,151.39 | $ 16,151.39 | **$ 4,041.36** |

[1] As defined below in the Plan Payment Procedures.
[2] As defined below in the Plan Payment Procedures.

| | | | | | |
|---|---|---|---|---|---|
| Citibank, N.A. | $ 2,147.50 | | $ - | $ 2,147.50 | **$ 537.34** |
| TD Bank USA, N.A. | $ 3,339.40 | | $ - | $ 3,339.40 | **$ 835.58** |
| Wells Fargo Bank, N.A. | $ 9,896.93 | 2 | $ 2,687.07 | $ 2,687.07 | **$ 672.35** |
| **TOTAL** | **$100,173.74** | | **$ 71,088.52** | **$ 91,098.83** | **$ 22,794.51** |

If no objections to claim are filed as to the Class 7 Convenience Claims prior to the Effective Date of the Plan, the Estimated Allowed Claim shall be and is an Allowed Claim and the Effective Date Distribution to the Holders of Class 7 Claims shall be fixed based on the same. The Class 7 Effective Date Distribution shall act as a credit towards Debtors' projected disposable monthly income.

Holders of Class 7 Claims shall additionally receive a pro-rata share of the Net UH Bonus and Net UH Stock Option Payments pursuant to the Plan Payment Procedures in Section 4.10 of the Plan.

The Class 7 Convenience Class Creditor are impaired by the Plan and entitled to vote to accept or reject the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtors s reserve the right to object to any and all claims.

**4.8 <u>Class 8: General Unsecured Creditors</u>**

Class 8 shall consist of the general unsecured creditors greater than or equal to $40,000.00 and not otherwise specifically classified in the Plan, including any deficiency claims pursuant to 11 U.S.C. §§ 506 and 522(f) or rejection damages. Debtors shall pay the Class 8 General Unsecured creditors a pro-rata share of the amount listed as Available to General Unsecured Creditors in the Budget (i.e. $147,417.80) based on the calculation listed in **<u>Exhibit "A"</u>** to the Plan which is based on a fraction the numerator of which is the particular Non-Priority Unsecured Claim[3] and the denominator of which is the Total Non-Priority Unsecured Claims[4].

If no objections to claim are filed as to the Class 8 General Unsecured Claims prior to the Effective Date of the Plan, the Estimated Allowed Claim shall be and is an Allowed Claim.

Holders of Class 8 General Unsecured Claims shall additionally receive a pro-rata share of the Net UH Bonus and Net UH Stock Option Payments pursuant to the Plan Payment Procedures in Section 4.10 of the Plan.

The Claims of the Class 8 Creditors are Impaired by the Plan and the holders of a Class 8 Claim are entitled to vote to accept or reject the Plan.

---

[3] As defined below in the Plan Payment Procedures.
[4] As defined below in the Plan Payment Procedures.

Nothing herein shall constitute an admission as to the nature, validity, or amount of a claim. Debtors s reserve the right to object to any and all claims.

**4.9 Class 9: Debtors' Interest**

Debtors shall retain all of Debtors' assets free and clear of any claims, liens or encumbrances except as specifically set forth in the Plan. In the event that Class 7 Convenience Class Creditors and Class 8 General Unsecured Claim do not vote to accept the Plan as a class, and the Court determines the "absolute priority rule[5]" is applicable in this Bankruptcy Case, Debtors propose the following "new value". Debtors shall contribute $5,000.00 of non-bankruptcy estate property, or such other amount as the Court shall deem necessary and appropriate, as new value. Specifically, Debtors shall obtain $5,000.00 to contribute as "new value" under the Plan by either obtaining a gift of such funds from a non-debtor person or entity or withdrawing the same from non-estate or exempt retirement funds. Debtors' contribution of "new value" under the Plan shall also include Debtors' payments of administrative expenses and payments to unsecured creditors under the Plan. Such payments constitute "new value" contributed under the Plan to the extent such payments are made from Debtors' post-petition income, after entry of the Final Decree or other closure of the case, or from exempt assets, or gifts or funds from a third party. New value is the vehicle through which current equity holders purchase the equity interest of the reorganized Debtor subject to the Plan obligations; or in the case of an individual debtor, the individual "purchases" Debtors' retained assets back from the Bankruptcy Estate subject to the plan obligations. Under the Plan, the creditors are receiving the value of the non-exempt property under the Plan. Any new value contributed by Debtors or on Debtors' behalf will be distributed in accordance with the priorities set forth in the Bankruptcy Code.

**4.10 Plan Payment Procedures**

4.10.1 The term of the Plan Payment Procedures shall commence on the Effective Date and terminate at midnight Eastern Time on the 5 year anniversary of the Effective Date (the "Plan Payment Procedures Term"). During the Plan Payment Procedure Term, Debtors shall disburse any Net UH Bonus (as defined below) and any Net UH Stock Option Payment (as defined below) as provided in the Play Payment Procedures.

The term "Net UH Bonus" shall mean any UH Bonus[6] which is received during the Plan

---

[5] Debtors show that the absolute priority rule is not applicable to individual 11 cases. However, a split of authority exists on this issue. To the extent that the absolute priority rule is deemed applicable, Debtors provide this provision which shall be applicable only in such event. Debtors do not waive their right to show that the absolute priority rule is not applicable to individual chapter 11 cases following 2005 amendments to the Bankruptcy Code including 11 U.S.C. § 1115. To the extent Debtors are retaining assets on account of Debtors' exemptions or otherwise rather than the Plan, the Court may determine that the absolute priority rule does not apply to such retention.
[6] The term "UH Bonus" means any discretionary annual bonus Debtor Godwin receives from his employment at United Healthcare, Inc.

Payment Procedures Term after payment of any taxes incurred due to the receipt of the same.

The term "Net UCH Stock Option Payments" shall mean any UH Stock Options[7] which vest during the Plan Payment Procedures Term after payment of any costs and expense of liquidation (including) broker fees and any taxes incurred due to the receipt and liquidation of the same. The Net UH Bonus and the Net UH Stock Option Payments shall collectively be referred to as the "Plan Payment Procedure Payments."

**Exhibit "A"** includes an estimated amount for the Net UH Bonus and Net UH Stock Option Payments during the Plan Payment Procedure Term but such is an estimate and is not a guarantee of said amounts.

Within 30 days of the receipt of a UH Bonus, Debtors will disburse the Net UH Bonus pursuant to the Plan Payment Procedures set forth below.

Within 30 days of the vesting of any UCH Stock Option, Debtors will liquidate and disburse the Net UCH Stock Options Payments pursuant to the Plan Payment Procedures set forth below.

4.10.2 The Plan Payment Procedure Payments shall be disbursed as follows:

1. First, to any Allowed Administrative Expense Claim until paid in full pro-rata based on a fraction the numerator of which is the particular Allowed Administrative Expense Claim and the denominator of which is all Allowed Administrative Expense Claims. Debtors anticipate and project the administrative expense of Jones & Walden LLC, as counsel to the Debtors; United States Trustee Quarterly Fees; and post-petition tax claims, including to the Internal Revenue Service and Georgia Department of Revenue, and then

2. Second, to any Priority or Secured Tax Claim until paid in full pro-rata based on a fraction, the numerator of which is the particular Allowed Priority or Secured Tax Claim and the denominator of which is all Allowed Priority or Secured Tax Claims; and then

3. to the Class 7 Convenience Class Unsecured Creditors and Class 8 General Unsecured Claims (each a "Non-Priority Unsecured Claim" and collectively, "Total Non-Priority Unsecured Claims") pro-rata based on a fraction the numerator of which is the particular Non-Priority Unsecured Claim and the denominator of which is the Total Non-Priority Unsecured Claims. Debtors anticipate and project but do not warrant the General Unsecured Claims listed on **Exhibit "A"** hereto based on the filed and scheduled proof of claim.

[7] The term "UH Stock Options" refers to the stock options included in Debtor Godwin's compensation at United Health Care, Inc.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Plan Payment Procedures herein.

**Article 5**
**Treatment of Unclassified Claims**

5.1 Summary. Pursuant to Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtors are not classified for purposes of voting on or receiving distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such claims are instead treated separately in accordance with Article 5 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code. With respect to potential Administrative Expense Claims, Debtors, pursuant to Court order, retained the law firm of Jones & Walden LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents, the Firm received a pre-petition retainer in the amount of $20,455.00. Debtors shall pay any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. Any remedy or payment terms in the Plan related to the Allowed Administrative Expense Claim of the Firm is not exclusive of any other remedies that are provided for herein or by law, and the Firm may commence an action to enforce the same. Nothing herein shall require the Firm to forbear from or otherwise delay in perfecting any claim of the Firm for professional fees and expenses associated with this Bankruptcy Case and or enforcing its rights and remedies under law or equity regarding the same, including without limitation filing an attorney lien in accordance with O.C.G.A. § 15-19-14, or otherwise.

Debtors are paying post-petition bills and do not expect any claims for unpaid post-petition goods and services other than possible professional fees. Debtors will incur quarterly trustee fees which Debtors intend to pay when due.

5.2 Administrative Expense Claims.

5.2.1 Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder and Debtors , or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtors in the ordinary course of business after the Filing Date, or otherwise assumed by Debtors on the Effective Date pursuant to this Plan will be paid or performed by Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

5.2.2 Except as otherwise provided in this Plan, any Person holding an

Administrative Expense Claim, other than an Administrative Expense Claim arising from the operation by Debtors of their business in the ordinary course of business, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtors. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtors or the Estate. A proof of claim asserting an Administrative Expense Claim shall not satisfy the requirement for filing an application for allowance of an Administrative Expense Claim.

5.2.3 Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Confirmation Date within thirty (30) days after the Confirmation Date.

Debtors may pay professional fees incurred after confirmation of the Plan without Court approval. Debtors shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

## Article 6
## Means for the Implementation of the Plan

6.1 Parties Responsible for Implementation of the Plan. Upon confirmation, Debtors will be charged with administration of the Case. Debtors will be authorized and empowered to take such actions as are required to effectuate the Plan, including the prosecution and enforcement of Causes of Action. Debtors will file all post-confirmation reports required by the United States Trustee's office. Debtors will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation.

6.2 Sources of Cash for Distribution.

Debtors intend to fund disbursements under the Plan from (i) Debtor Godwin's payroll and any bonuses from his employment (ii) Stock options which may vest from Debtor Godwin's employment with United Healthcare post-petition and (iii) Debtor Bulloch's real estate commission income. Additionally, Debtors may contribute $22,794.51 from a gift from a friend or family member or from their retirement accounts to assist with funding the Effective Date payment to the Convenience Class of creditors on the Effective Date; and to fund the Class 8 payment, if applicable. (the "Contribution").

Debtors shall act as the Disbursing Agent to make payments under the Plan unless Debtors appoints some other person or entity to do so. Debtors may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtors may also pay ordinary and necessary expenses of administration of the Plan in due course.

6.3 Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, Debtors will retain and may (but is not required to) enforce all Retained Actions. After the Effective Date, Debtors, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court. Debtors (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions so long as it is the best interests of Debtors (or any successors holding such rights of action). The failure of Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtors of such claim, right of action, suit, proceeding or other Retained Action, and Debtors will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. Debtors reserve all causes of actions for breach of any former or now existing agreement or otherwise. Debtors specifically reserve any cause of action against any of Debtors' account debtors related to underpayment or non-payment of any fees, or other monies or receivables due. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtors to collect any receivable or right to payment under any applicable laws. Debtors expressly reserve the right to exercise any and all remedies available to Debtors regarding their accounts receivable or rights to payment at law or in equity, at such time or times as Debtors from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtors to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtors hereby expressly reserves the right to declare any such other default or event of default and to take such other action as Debtors may be entitled to applicable law. No delay on the part of Debtors in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights. Debtors shall retain "Avoidance Actions" under Chapter 5 of the Bankruptcy Code. Debtors specifically reserve all rights, claims and defenses related to objections to claims.

6.4 Effectuating Documents, Further Transactions. Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5 Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to 11 U.S.C. §1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other applicable laws, codes or regulations, any transfers from Debtors to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or agents to

forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6 Further Authorization. Debtors shall be entitled to seek such orders, judgments, injunctions and rulings as she deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7 Liabilities of the Debtor. Debtors will not have any liabilities except those expressly assumed under the Plan. Debtors will be responsible for all expenses incurred by Debtors in the ordinary course of business after the Filing Date ("Ordinary Course Expenses"), and those Ordinary Course Expenses will be paid in the ordinary course of business as they become due or as agreed upon by the Holder of the Ordinary Course Expense claim.

## Article 7
## Distributions

7.1 Disbursing Agent. Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtors or her agent.

7.2 Distributions of Cash. Any Distribution of Cash made by Debtors pursuant to this Plan shall, at Debtors' option, be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

7.3 No Interest, Fees, Costs or Attorney Fees on Claims or Interests. Unless otherwise specifically provided for in the Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder, postpetition interest, fees, costs or attorney fees shall not accrue or be paid on Claims, and no Holder shall be entitled to interest, fees, costs or attorney fees accruing on or after the Filing Date through and including the Effective Date on any Claim or after the Effective Date unless specifically provided for in the Plan. Additionally, and without limiting the foregoing, interest, fees, costs and attorney fees shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim. The provisions of the section of the Plan shall include and pertain to, without limitation, any such claim for post-petition interest, fees, costs or attorney fees pursuant to 11 U.S.C. §§ 503, 506 or 507 if no such claim was allowed prior to the Confirmation Date.

7.4 Delivery of Distributions. Delivery of Distributions. The Distribution to a Holder of an Allowed Claim shall be made by Debtors (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtors is

notified by such Holder in writing of such Holder's then-current address, at which time Debtors shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtors and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtors and not claimed within six (6) months of return shall be irrevocably retained by Debtors notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtors to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtors shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtors shall be relieved of any obligation to make said payment or Distribution and Debtors is relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtors to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtors to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtors that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtors on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtors' obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtors shall Debtors' obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against the Debtors or the Debtors' property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtors shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtors shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

7.5 Distributions to Holders as of the Record Date. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Confirmation Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Holder of any Claim. Debtors shall have no obligation to

recognize any transfer of any Claim occurring after the Confirmation Date. Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Confirmation Date.

7.6 Fractional Dollars. Any other provision of this Plan notwithstanding, the Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtors' option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7 Force Majeure. Without limitation of any other provisions of the Plan, the laws of force majeure shall apply to the Plan and Debtors' compliance with the Plan. Any Person with obligation under this Plan will not be required to perform any obligation under this Plan or be liable for damages to any other Person to whom performance is otherwise owed under this Plan so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire, or any similar, substantial natural event, pandemics, laws, orders of government, and any other cause not reasonably within the control of such Person with obligations under the Plan and which by the exercise of due diligence the non-performing Party is unable in whole or in part to prevent or overcome. All time periods for such performance will be extended for the period that the act of God or force majeure is in place. Debtors further expressly reserved the right to modify this Plan pursuant to Article 14 of the Plan upon the occurrence of an act of God or force majeure. Debtors shall retain the right to reopen this Bankruptcy Case and seek other relief pursuant to 11 U.S.C. § 305(a) for any reason, so long as the Bankruptcy Court finds that such suspension is in the interests of creditors and the debtor.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1 Objections to Claims. Debtors shall be entitled to object to Claims, provided, however, that Debtors shall not be entitled to object to Claims (i) that have been Allowed by a Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan.

8.2 No Distributions Pending Allowance. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3 Estimation of Claims. Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to the Bankruptcy Code regardless of whether Debtors has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any

contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and are not necessarily exclusive of one another.

8.4 Resolution of Claims Objections. On and after the Effective Date, Debtors shall have the authority to compromise, settle, otherwise resolve Claims, or withdraw any objections to Claims without approval of the Bankruptcy Court.

**Article 9**
**Provision for Assumption of Unexpired Leases and Executory Contracts**

9.1 Debtors is not a party to any unexpired executory contracts or leases. Any unexpired leases or executory contracts which are not expressly assumed pursuant to this Plan or are the subject of a pending motion to assume shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. Any contract for insurance is assumed.

A proof of claim for damages arising from any executory contracted that is rejected must be filed on or before thirty (30) days after entry of the Confirmation Order. Any claims which are not timely filed will be disallowed and discharged.

**Article 10**
**Effect of Plan on Claims and Interests**

10.1 Vesting of Debtors' Assets. Except as otherwise explicitly provided in the Plan, upon the Court's entry of the Confirmation Order, all property comprising the Estate (including Retained Actions, but excluding property that has been abandoned pursuant to an order of the Bankruptcy Court) shall revest in Debtors free and clear of all Claims, Liens, charges, encumbrances, rights and Interests of creditors and equity security holders (as applicable), except as specifically provided in the Plan. As of the Confirmation Date, Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2 Discharge of the Debtors. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtors or his Estate that arose prior to the Filing Date and any debt of a kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code. Debtors does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code; however, Debtors have not waived

his right to seek entry of a discharge order before completion of all plan payments. In the event Debtors seeks entry of a discharge order after the entry of a final decree, Debtors may reopen the Case for purposes of obtaining a discharge and the fee associated with the attendant motion to reopen case may be waived.

Upon entry of a Confirmation Order, the provisions of the Plan bind: (a) Debtors , (b) any entity acquiring property under the Plan, (c) any creditor, (d) any claimant of or against Debtors , and (e) any party to an executory contract with Debtors, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

10.3 Injunction. Regardless of whether the Court has entered a final decree in the Bankruptcy Case, all creditors of Debtors, claimants against Debtors , and all persons having or claiming interest of any nature in Debtors' property and assets are enjoined and stayed: from pursuing or attempting to pursue any action, commencing or continuing any action, employing any process or taking any act against Debtors or her property, on account of or based upon any right, claim, or interest which any such creditor, claimant, or other person may have had at the date of the filing of Debtors' Chapter 11 petition, except with respect to claims, rights, or interest arising out of the Plan. In other words and not in limitation of the foregoing, creditors of the Debtors are enjoined from collecting pre-petition debts owed by Debtors except to the extent allowed by the Plan.

10.4 Setoffs. Debtors may, but shall not be required to, set off or recoup against any Claim (and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim), claims of any nature whatsoever that Debtors may have now or in the future against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtors of any such claim that Debtors may have against such Holder.

10.5 Effect of Confirmation.

10.5.1 Binding Effect. On the Confirmation Date, the provisions of the Plan bind: (a) Debtors, (b) any entity acquiring property under the Plan, (c) any creditor, (d) any party to an executory contract with Debtors, whether or not the claim or interest of such creditor or equity holder is impaired under the Plan, and whether or not such creditor or equity holder has accepted the Plan.

10.5.2 Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay provided in § 362(a) of the Bankruptcy Code shall terminate.

10.5.3 Filing of Reports. Reorganized Debtors shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.5.4 Post-Confirmation Retention of Professionals. After entry of the Confirmation Order, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will employ and pay professionals in the ordinary course of business.

## Article 11
## Conditions Precedent

11.1 Conditions to the Effective Date. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.1 of the Plan.

11.1.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not be stayed.

11.1.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement the Plan shall be in form and substance that is acceptable to Debtors in their reasonable discretion.

11.2 Waiver of Conditions to Confirmation or Consummation. The conditions set forth in Article 11.1 of this Plan may be waived, in whole or in part, by Debtors without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Effective Date may be asserted by Debtors in Debtors' sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtors in Debtors' sole discretion). The failure of Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

## Article 12
## Retention and Scope of Jurisdiction of the Bankruptcy Court

12.1 Retention of Jurisdiction. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1 to adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established in the Plan;

12.1.2 To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated claim, to establish the amount of any reserve required to be withheld from any distribution under the Plan on account of any disputed, contingent or unliquidated claim;

12.1.3 To resolve all matters related to the rejection, assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtors;

12.1.4 To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtors;

12.1.5 To hear and rule upon all applications for Professional Compensation;

12.1.6 To remedy any defect or omission or reconcile any inconsistency in the Plan, as may be necessary to carry out the intent and purpose of the Plan;

12.1.7 To construe or interpret any provisions in the Plan and to issue such orders as may be necessary for the implementation, execution and consummation of the Plan, to the extent authorized by the Bankruptcy Code;

12.1.8 To adjudicate controversies arising out of the administration of the Estate or the implementation of the Plan;

12.1.9 To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of the Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by Debtors to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning Debtors and to determine and declare any tax effects under the Plan;

12.1.12 To determine such other matters as may be provided for in the Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of the Plan, or the rights, duties or obligations of any Person under the provisions of the Plan;

12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtors sold any of their assets during the Bankruptcy Cases; and

12.1.15 To enter a final decree.

12.2 Alternative Jurisdiction. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto.

12.3 Final Decree. The Bankruptcy Court may, upon application of the Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing this case pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) the Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications the Debtors have brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action; (3) enforcing or interpreting this Plan or supervising its implementation; (4) entering a discharge order; or (5) for other cause. Debtors shall be authorized to reopen the Bankruptcy Case for purposes of obtaining a discharge after entry of the final decree and the fee associated with the attendant motion to reopen Debtors' case may be waived.

## Article 13
## Miscellaneous Provisions

13.1 Modification of the Plan. Debtors shall be allowed to modify the Plan pursuant to section 1127 of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in the Plan, pursuant to Article 13.1 of the Plan, Debtors may modify the Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject the Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtors reserve the right in accordance with section 1127 of the Bankruptcy Code to modify the Plan at any time before the Confirmation Date.

13.2 Allocation of Plan Distributions between Principal and Interest. Except as expressly provided by this Plan, to the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3 Applicable Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4 Preparation of Estate Returns and Resolution of Tax Claims. Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5 Headings. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6 Revocation of Plan. Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7 No Admissions; Objection to Claims. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtors to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8 No Bar to Suits. Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop Debtors from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal action was disclosed in any disclosure statement filed by Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, Debtors retains and reserves the right to prosecute Retained Actions.

13.9 Conflicts. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

13.10 Force Majeure. Without limitation of any other provisions of the Plan, the laws of force majeure shall apply to the Plan and Debtors' compliance with the Plan. Any Person with obligation under this Plan will not be required to perform any obligation under this Plan or be liable for damages to any other Person to whom performance is otherwise owed under this Plan so long as the performance or non-performance of the obligation is delayed, caused, or prevented by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire, or any similar, substantial natural event, pandemics, laws, orders of government, and any other cause not reasonably within the control of such Person with obligations under the Plan and which by the exercise of due diligence the non-performing Party is unable in whole or in part to prevent or overcome. All time periods for such performance will be extended for the period that the act of God or force majeure is in place. Debtors further expressly reserved the right to modify this Plan pursuant to Article 14 of the Plan upon the occurrence of an act of

God or force majeure. Debtors shall retain the right to reopen this Bankruptcy Case and seek other relief pursuant to 11 U.S.C. § 305(a) for any reason, so long as the Bankruptcy Court finds that such suspension is in the interests of creditors and the debtor.

13.11 Breach of Plan. In the event of a breach of the Plan, Confirmation Order, or Discharge Order (and the related injunctions for each) by a creditor, holder of a claim, party in interest or other non-Debtors party, Debtors shall be entitled to seek to enforce the terms of the same in the Bankruptcy Court, or any court of competent jurisdiction, and any court or tribunal with jurisdiction over the dispute may award Debtor's reasonable attorney fees and costs incurred in seeking compliance with the Plan in accordance with an award of sanctions or pursuant to Georgia law, including without limitation O.C.G.A §13-1-11.

## Article 14
## Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Holders of Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor are represented, implied, or warranted.

The proponent assumes no responsibility for the tax effect that consummation of the Plan will have on any given Holder of a Claim or Interest. Holders of Claims or Interest are strongly urged to consult their own tax advisors covering the federal, state, local and foreign tax consequences of the Plan to their individual situation.

Respectfully submitted this 26th day of May, 2026.

*/s/ Jason Chadwick Bulloch*
Jason Chadwick Bulloch
Debtor

*/s/ Mark Brandon Godwin*
Mark Brandon Godwin
Debtor

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
William M. Gooding
Georgia Bar No. 301119
699 Piedmont Ave NE
Atlanta, Georgia 303089
(404) 564-9300
Counsel for Debtors

**EXHIBIT "A"**

Estimated Unsecured Claims

**Estimated Unsecured Claims**

| Holder | Scheduled Claim | Claim No. | Filed Claim | Estimated Allowed Claim (not an admission) | Estimated Total 60 Monthly Distribution | Estimated Prorata Bonus Total | Estimated Prorata Stock Options | Estimated Total Distribution |
|---|---|---|---|---|---|---|---|---|
| American Express National Bank | $ 35,464.15 | 4 | $ 34,334.72 | $ 34,334.72 | $ 8,591.14 | $ 7,284.69 | $ 4,953.59 | $ 20,829.42 |
| Bank of America | $ 14,523.41 | | | $ 14,523.41 | $ 3,634.01 | $ 3,081.39 | $ 2,095.34 | $ 8,810.74 |
| Blaze Credit Union | $ 13,911.04 | 8 | $ 13,586.64 | $ 13,586.64 | $ 3,399.61 | $ 2,882.63 | $ 1,960.19 | $ 8,242.44 |
| Capital One, National Assoc | $ 4,262.31 | 6 | $ 4,328.70 | $ 4,328.70 | $ 1,083.12 | $ 918.41 | $ 624.52 | $ 2,626.04 |
| Capital One, National Assoc | $ 16,629.00 | 5 | $ 16,151.39 | $ 16,151.39 | $ 4,041.36 | $ 3,426.79 | $ 2,330.22 | $ 9,798.36 |
| Citibank, National Association | $ 2,147.50 | | | $ 2,147.50 | $ 537.34 | $ 455.63 | $ 309.83 | $ 1,302.80 |
| Star Bank | $ 468,060.14 | 1 | $ 498,060.14 | $ 498,060.14 | $ 124,623.29 | $ 105,671.85 | $ 71,856.86 | $ 302,152.00 |
| TD Bank USA, N.A. | $ 3,339.40 | | | $ 3,339.40 | $ 835.58 | $ 708.51 | $ 481.79 | $ 2,025.87 |
| Wells Fargo Bank, N.A. | $ 9,896.93 | 2 | $ 2,687.07 | $ 2,687.07 | $ 672.35 | $ 570.11 | $ 387.67 | $ 1,630.13 |
| **TOTAL** | **$ 568,233.88** | | **$ 569,148.66** | **$ 589,158.97** | **$ 147,417.80** | **$ 125,000.00** | **$ 85,000.00** | **$ 357,417.80** |

| | |
|---|---|
| General Unsecured Creditors Payments | $ 147,417.80 |
| Estimated UH Bonus at $25,000.00 a year (not an admission) | $ 125,000.00 |
| Estimated UH Stock Option Payments (not an admission) | $ 85,000.00 |
| **Total Estimated To Unsecured Creditors** | **$ 357,417.80** |
| **Recovery Percentage Estimated** | **60.67%** |

## CERTIFICATE OF SERVICE

I certify that on the date specified herein below I cause to be served a copy of the foregoing document via first class United States mail in a properly addressed envelope with sufficient postage affixed thereto to ensure delivery upon the parties listed below.

Office of the United States Trustee
362 Richard B. Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, Georgia 30303

This 26th day of May, 2026.

**JONES & WALDEN LLC**

*/s/ Leslie M. Pineyro*
Leslie M. Pineyro
Georgia Bar No. 969800
William M. Gooding
Georgia Bar No. 301119
699 Piedmont Ave NE
Atlanta, Georgia 303089
(404) 564-9300
Counsel for Debtors